# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | **2:13-cr-00146** |
| | ) | |
| LUIS PECINA | ) | |

## OPINION AND ORDER

Luis Pecina was charged with possessing methamphetamine with the intent to distribute it. On the morning of trial he pleaded guilty. Before that Pecina had filed a pretrial motion indicating his intent to call an expert on Mexican cartels and proffered to the government records related to his kidnaping ten years ago – he intended to use this evidence to advance an affirmative defense under a duress or necessity theory. The government filed a motion *in limine* seeking to prevent Pecina from invoking this defense by arguing that Pecina couldn't show all of the elements required for a duress or necessity defense, even if the jury credited all of his evidence. Two days before trial was set to begin I heard argument on this issue. I decided that Pecina's proposed evidentiary support didn't meet the legal standards for a duress or necessity defense, so I granted the government's motion. I advised the parties at the time that I would follow up my oral ruling with a written decision, and although the issue has since been rendered moot by Pecina's plea of guilt, this is that Order.

**Background**

Other Orders review the facts of this case in great detail, so I won't do it again here. Suffice it to say that in November 2013 Pecina was riding in a car that a police officer stopped for having excessively-tinted windows and not signaling a turn. The officer smelled marijuana coming from the car, detained the occupants, and conducted a lawful search of the car. The officer found a distribution quantity of crystal methamphetamine under Pecina's car seat. Pecina was arrested and questioned, and has been in custody since his arrest. The driver of the car, Jenny Valenzuela, was also arrested that day but wasn't charged.

In the year that he has been in custody, not to mention before his arrest, Pecina never asked for police protection or stated to investigators that he had acted under duress imposed by a drug cartel. This defense first surfaced in pretrial filings. Valenzuela was also questioned by police and she testified at the hearing on Pecina's motion to suppress, but she never mentioned anything that suggested Pecina possessed the drugs because he was under some type of duress. Valenzuela testified that she and Pecina were driving to motels in Hammond the morning they were arrested looking for a room in which to spend time together and to smoke marijuana. (DE 46 at 69-71.) She didn't mention any cartel or gang connection during her testimony, and neither the government nor the defense has indicated she ever mentioned anything along those lines at any other time.

Pecina's cartel involvement had never come up head-on in a proceeding in this Court until the hearing on the government's motion to keep out a duress defense held on November 10, 2014. That involvement still has not been described in detail, but Pecina proffered to the government medical and police reports related to a kidnaping of Pecina in 2004 that defense counsel suggested was related to Pecina's involvement with the violent, drug-smuggling Sinaloa Cartel.[1] (DE 113 Exhs. A and B.) Neither report identifies the kidnapers or references the Cartel. Pecina told the police multiple times in 2004 that he did not know his kidnapers, and explained that he was unsure of why they had targeted him. The police report notes that Pecina said he feared for his family's safety. (DE 113 Ex. A at 2-3.) The medical report details Pecina's injuries, which included bruised eyes and lacerations to his face and arm. (DE 113 Ex. B at 3; DE 113 Ex. A at 2.) Pecina's attorney added during the hearing that he intended to elicit from law enforcement agents who investigated this case testimony that Pecina had informed them he was sent by the Sinaloa Cartel. Defense counsel stated that Pecina might testify, but did not indicate what more Pecina might say to support a duress defense if he were to testify.

---

[1] The Sinaloa Cartel, based in Sinaloa, Mexico, smuggles illegal drugs into the United States – possibly as much as half of the quantity of illegal drugs imported from Mexico each year. *See* Patrick Radden Keefe, *Cocaine Incorporated*, N.Y. Times (June 15, 2012), http://www.nytimes.com/2012/06/17/magazine/how-a-mexican-drug-cartel-makes-its-billions.html?smid=pl-share.

Defense counsel stated that the evidence I've described shows that Pecina worked for the Cartel and had firsthand knowledge of the Cartel's methods, and that he had reason to fear the Cartel. Pecina's proposed expert on Mexican drug cartels could connect Pecina's kidnaping to cartel methods, and expound cartel practices and policies and the strong coercion a cartel can exert. Pecina's attorney argued that Pecina had an ongoing threat hanging over his head that qualified as the kind of pressure that meets the requirements for a defense of duress. The defense did not state that Pecina had ever received any specific or particularized threat, including with respect to any of Pecina's actions at issue in this case.

**Analysis**

"As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988) (addressing entrapment defense). A defendant may propound an affirmative defense like duress or necessity, through which he argues that even if he acted illegally he did so under coercion to avoid a greater harm to himself or others. To find a defendant not guilty due to duress a jury must find "that he was under imminent fear of death or serious bodily harm" and he committed the crime to avoid that harm. *United States v. Tokash*, 282 F.3d 962, 969 (7th Cir. 2002) (citations omitted). The defense can't succeed if the defendant had a reasonable legal alternative to committing the charged crime that would have also avoided the threatened harm. *See United States v. Bailey*, 444 U.S. 394, 410 (1980); *Tokash*,

4

282 F.3d at 969. The Seventh Circuit Pattern Jury Instructions address a coercion defense, describing the threatened harm as "immediate." Seventh Circuit Pattern Crim. Jury Instruc. 6.08. The Committee Comments explain that if the defendant doesn't contest that he "had a full opportunity to avoid the criminal act without danger to himself or others he is not entitled to a coercion instruction." *Id.* (citations omitted). Furthermore, threats of violence alone aren't enough – "[t]here must also be a showing of present and immediate compulsion." *Id.* (citations omitted).

So Pecina has to proffer some evidence of two things in order to be permitted to present a duress defense to the jury: (1) he faced the threat of immediate harm if he did not commit the crime with which he's charged, and (2) he had no reasonable legal alternative available to avoid both the crime and the threatened harm. Pecina didn't offer evidence of either required element, so a duress defense is unavailable to him.

A necessity or duress defense is an appropriate subject of a motion *in limine* where the trial judge accepts the defendant's offer of proof as true, and decides only whether the offered proof is sufficient as a matter of law to support the proposed defense. The judge assesses whether, if the jury were to believe the evidence, there would be evidence to support *each element* of the defense. *See Bailey*, 444 U.S. at 415; *United States v. Tokash*, 282 F.3d at 967-68. The purpose of this gatekeeping mechanism is to only allow defenses that are colorable. If a defense can't rationally be found because it isn't supported by the proffered evidence, then there is no need to ask the jury to assess it. *See Bailey*, 444 U.S. 415-16. If there were no way to keep out

unsupportable defenses, then every jury in every criminal case would have to rule in or out every affirmative defense a creative attorney could imagine, even those apropos of nothing in the case.

Here, the defense didn't challenge the requirement of "imminent" danger, but rather the meaning of the word "imminent." Defense counsel didn't address alternatives Pecina had. Defense counsel argued that the Seventh Circuit's interpretation of an imminent threat in the prison context doesn't apply here, and it should be read more broadly in Pecina's situation to cover something more than having a figurative gun to the head at the moment the charged crime was committed. The defendant's theory of duress caused by an imminent threat would apparently include general fear of the Cartel founded on or reinforced by a kidnaping nine years before the present crime was committed. Reading the Seventh Circuit's *Tokash* opinion assessing a duress argument in the prison context, where prisoners possessed weapons to protect themselves from general fear of prison violence, I come to the exact opposite conclusion as Pecina with respect to imminence and context.

First, with respect to immediacy, if the presence of a violent felon sharing one's bunkbed or cellblock doesn't count as imminent danger (as in *Tokash*), then a Cartel generally keeping tabs on Pecina can't possibly qualify.² The defense didn't suggest

---

² I accept for purposes of this motion Pecina's inference that the Cartel was monitoring his activities, although it requires a bit of a leap from the proffered evidence to reach this conclusion with respect to his particular situation. The evidence is that (1) Pecina was connected to the Sinaloa Cartel (in what capacity or at what level

6

that some specific threat had been made requiring Pecina to commit this crime, or that a Cartel hitman was constantly watching him and waiting for the first moment he tripped up. The same generalized constant threat that applies to many prisoners may well also apply to those under the thumb of gangs or cartels. If a generalized threat could be quantified, that to prisoners would likely be greater because prisoners are boxed in with potential attackers in close proximity, they may run into one around every corner, and their whereabouts are rigidly predictable. The Seventh Circuit has held that even a prisoner rumored to have a contract on his life doesn't qualify for a necessity or duress defense for having a weapon where he doesn't "allege that the person making the supposed threat against him was standing in front of him with a knife or other weapon at the time he informed [the defendant] that he would like to see him dead." *United States v. Sahakian*, 453 F.3d 905, 910 (7th Cir. 2006). A literal sword leveled at the defendant could cause duress, but the figurative sword of Damocles of cartel employment doesn't, whatever psychological agony it might inflict.

People who participate in large scale drug dealing are engaged in a risky enterprise. To side with Pecina and his elastic view of the defense of duress would be to make the defense available in the mine run of drug cases. To do so is to stretch the defense to its breaking point.

---

has never been indicated), and (2) cartels in general operate by keeping a tight hold on their people. The inference is that the Sinaloa Cartel had a tight hold on Pecina at the time he committed this crime.

Second, with respect to availment of legal alternatives, logic dictates that duress shouldn't be assessed *more broadly* outside of prison than in it – prisoners lack the most basic alternative to violence that is available to non-prisoners, namely fleeing from the danger. Pecina has never claimed that he ever availed himself of the many legal options available to him, the most obvious of those being flight or cooperation with law enforcement. When he spoke to the police in 2004 about his kidnaping he never mentioned Cartel involvement. He doesn't even claim that he has ever tried to exercise any option other than complying with Cartel directives. Rather than doing something to ease the Cartel's hold on him, on the morning he was arrested Pecina was spending time and smoking marijuana with Valenzuela. Unless she was a Cartel operative preventing Pecina from fleeing or going to law enforcement, which has never been so much as hinted at, Pecina had legal alternatives to possessing a distribution quantity of methamphetamine.

The Seventh Circuit pointed out in *Tokash* the absurdity of attempting to justify prisoners' possession of weapons by pointing to a general and constant fear of violence because prisons are violent places – no prisoner could ever be deprived of weapons under those terms. *United States v. Tokash*, 282 F.3d 962, 970 (7th Cir. 2002). Similarly here, if Pecina's theory prevailed, members of the most brutal and retributive gangs and cartels would have a free pass to commit crimes, while everyone else would be on the hook. *See, e.g.*, *United States v. Slocum*, 486 F. Supp. 2d 1104, 1115 (C.D. Cal. 2007) ("Accepting [the implied] generalized threat [of common knowledge that a gang kills

8

the disobedient] as sufficient would greatly expand the law of duress in the gang context and again promote the 'law of the jungle' over that of civilized society.").

Pecina hasn't offered evidence that he faced an immediate threat in the sense required for a duress defense, and in any event he hasn't even attempted to explain why he didn't opt for one of the available alternatives. Taking all of the evidence Pecina proffered as true, he still hasn't stated the elements of a duress defense.

**CONCLUSION**

For the foregoing reasons, as stated from the bench at the pretrial conference on November 10, 2014, the government's motion *in limine* to exclude evidence of a duress defense is **GRANTED**. (DE 92.)

**SO ORDERED.**

ENTERED: November 17, 2014

/s/ Philip P. Simon

**PHILIP P. SIMON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**