**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **2:13-cr-00146** |
| | ) | |
| LUIS PECINA | ) | |

## OPINION AND ORDER

Luis Pecina was charged with possessing methamphetamine with the intent to distribute it. On the morning of trial he pleaded guilty. Shortly before trial he sought reconsideration of my prior denial of his suppression motion. Two days before trial I reopened the suppression hearing for the very limited purpose of hearing testimony from three law enforcement officers regarding new information that one of them provided to the government during trial preparation. If the other two officers had known the information all along and had participated in withholding it from the attorneys in the case, then their credibility would be adversely affected, and their credibility was essential to my initial denial of Pecina's suppression motion. The defense and the government examined the three officers, and after the testimony I affirmed my denial of Pecina's suppression motion. I advised the parties at the time that I would follow up my oral ruling with a written decision, and although the issue has since been rendered moot by Pecina's plea of guilt, this is that Order.

## Background

I won't review the entire suppression issue again, and I instead refer interested parties to my lengthy previous order denying Pecina's suppression motion based on the

first three suppression hearings. (Docket Entry 62.) In summary, on November 14, 2013 Pecina was riding in a car that Hammond Police Officer Dan Young stopped for having excessively-tinted windows and not signaling a turn. When the car Pecina was traveling in pulled into a parking place in a Motel 6 and the police car pulled up behind with its police lights flashing, Pecina hurried out of the car and briefly moved to flee. Officer Young pursued Pecina and detained him. The officer smelled marijuana coming from the car so he detained Pecina and the car's driver, Jenny Valenzuela, and conducted a lawful search of the car. Officer Young found a distribution quantity of crystal methamphetamine under Pecina's car seat, as well as marijuana in a mostly-spent blunt. Pecina made statements as he was detained and also later when he was questioned, and he confessed to trafficking the methamphetamine.

Pecina moved to suppress the drugs found in the car search and Pecina's statements, arguing that they were the product of an illegal search. The issue came down to whether Officer Young had really smelled the odor of marijuana coming from the car. If not, none of the other violations committed up to that point (the traffic violations and Pecina's attempt to flee) would have provided a basis to search the car. I found Officer Young credible, and based on the smell of marijuana coming from the car held that the search of the car was lawful. Drug Enforcement Agency Task Force Agent Robert Leary wasn't present for the car stop or search, but his testimony about evidence collection procedures supported Officer Young's testimony.

When the police searched the car, they found three mobile phones, which they seized as evidence. One of the three was still in its original packaging, never used. Officer Young found a fourth cell phone, this one broken, on the floor of his police vehicle after transporting Pecina to jail, and he believed Pecina had broken the phone en route. It's the search of the contents of these phones that formed the basis of Pecina's request that I reconsider his suppression motion. Most of what happened with the phones isn't contested. The day they were seized, the phones were transferred from the Hammond Police Department to Agent Robert Leary, the Hammond Police liaison to the Federal Drug Enforcement Agency. The next day Officer Jason Carmin, an Indiana State Police trooper and DEA task force officer, took three phones (including the broken one) out of evidence storage and plugged them into some equipment which successfully extracted data. That same day, November 15, Officer Carmin and Officer Leary went together to the Hammond Police Department to pick up Pecina and take him to court for his initial appearance in this case.

Officer Carmin testified at the supplemental suppression hearing that he did not discuss his search of the mobile phones with Agent Leary, Officer Young, or the Assistant United States Attorney assigned to this case on November 15, 2013 or at any time after that, until he disclosed the fact of the search during trial preparation on November 6, 2014. The Assistant United States Attorney promptly notified the defense about Officer Carmin's search of the phones, and the defense sought to reopen the suppression hearing based on it. At the supplemental suppression hearing Officer

Carmin testified that he had searched the phones on his own, and not at anyone else's direction. He explained that he realized after beginning to look up numbers from the phones in commercial databases that the search may have come too late to qualify as a search incident to arrest, and therefore the search may not have been lawful,[1] so Officer Carmin stopped looking into the contents of the phones. He also said that the case wasn't his, and searching the phones wasn't a priority for him. In fact, he only knew of the three unpackaged phones that were seized, indicating his lack of thorough knowledge about this case. He testified that he put the printed reports of the phones' contents into a desk drawer, where he found them buried nearly a year later when he looked on November 6 after the trial preparation meeting.

Agent Leary testified at the supplemental suppression hearing that he and Officer Carmin transported Pecina to his initial court appearance, and that they did not discuss Officer Carmin's search of the phones. Agent Leary stated that he did not know about Officer Carmin's downloading of phone contents until roughly a year after the search (at the trial preparation meeting on November 6, 2014). Agent Leary stated that he had asked two people in his office (neither of whom was Officer Carmin) whether

---

[1] Of course, we now know that the search wouldn't have been lawful even if it had been done earlier and truly incident to arrest. A cell phone can't lawfully be searched incident to arrest pursuant to the Supreme Court's unanimous decision in *Riley v. California*, 134 S. Ct. 2473, 2493 (2014) ("a warrant is generally required before [] a [cell phone] search, even when a cell phone is seized incident to arrest"). That opinion was issued after Pecina's arrest and Carmin's search. In any event, the issue here isn't the lawfulness of the cell phone searches, but who knew about the searches and when. I've accepted, for the purpose of this motion, that the phone searches were unlawful.

information could be retrieved from a broken phone, and they both told him it could not, so he didn't pursue the phones as an investigative avenue. Agent Leary explained that the broken phone was the only one he was interested in because Pecina took pains to break it, signaling it contained something worth hiding. Agent Leary also testified that the police obtained Pecina's confession to methamphetamine trafficking the day he was arrested, and sometimes Agent Leary doesn't pursue phone search warrants when the police already have a confession.

Officer Young testified that he had seized the four cell phones, and has talked to Agent Leary (but not Officer Carmin) about the investigation of Pecina. Officer Young's testimony indicated that he is a beat cop – he conducted the traffic stop, made the arrest, searched the car, and then turned over everything he had to Agent Leary and the DEA. Officer Young has never gathered information from a cell phone, nor pursued a lead from one as part of a drug investigation. He testified that he first learned that Officer Carmin had searched any phones in this case on November 6, 2014.

**Analysis**

The defense's suppression motion hinges on Officer Young's credibility. If he smelled marijuana coming from Pecina's car then the search that turned up the drugs was lawful; if he didn't really smell marijuana, then there was no basis to search the car, so the drugs and Pecina's statements deriving from their discovery must be suppressed. The defendant's argument for reopening the suppression hearing and requesting that I reconsider is that the information about Officer Carmin's search of the phones

negatively affects Officer Young's credibility. I initially denied Pecina's suppression

motion because I found Officer Young's testimony credible, and I believed that he

smelled marijuana coming from the car. The defendant's motion to reopen the

suppression hearing argued that "[i]t is difficult to believe that all three [police officers]

did not know about the illegal search. The defense seeks to reopen the suppression

hearing to question each concerning what each knew about the illegal search and the

failure to disclose the information to the U.S. Attorney's Office." (DE 108 at 2.)

To put it plainly, the question at the supplemental suppression hearing was

whether Officer Young and Agent Leary knew about Officer Carmin's phone search

and whether either participated in withholding information about the search. If they

did, this could be relevant to assessing their credibility. I agreed with the defense that

the officers should be questioned about what they knew of the phone searches and

when they learned it, so I ordered the government to bring the officers to court and I

allowed the defense to examine the officers.

I have already set out the legal basis for the suppression of evidence in my

previous Order, so I'll only do it briefly here. The Fourth Amendment protects people's

right to be free from unreasonable searches and seizures. Once someone is under arrest,

law enforcement officers may conduct a search incident to the arrest, but may only

search the space within the arrestee's immediate control to prevent the arrestee from

accessing either a weapon or evidence that the arrestee can then destroy. In the car

context, law enforcement may search the car of arrested person "when it is reasonable

to believe that evidence of the offense of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 335 (2009). A criminal defendant may move to suppress evidence that law enforcement obtained due to an illegal search or seizure. If a search or seizure is no good, then all of the evidence obtained as a direct or indirect result will be excluded as the fruit of the poisonous tree. The taint attaches broadly to any evidence obtained by law enforcement's illegal act, and can cover physical evidence and statements. *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963); *United States v. Conrad*, 673 F.3d 728, 732 (7th Cir. 2012).

After seeing the officers on the stand and hearing the testimony outlined above, I find the officers credible. Officer Carmin was over-eager and decided the day after the arrest to plug in the phones to see if there was any bombshell evidence. He printed out the contents of the phones and began searching commercial databases to connect numbers to names. It then occurred to him that the phone searches might not be lawful, so he stopped his review and decided to pretend it had never happened. It wasn't even his case, and he figured if he didn't mention it and influence the investigation then it would be as if the search had never happened; no harm, no foul. Officer Carmin seems to have come to his senses during the pretrial preparation session, and he came clean to the Assistant U.S. Attorney and the other police officers. The government promptly complied with its disclosure obligations and turned over the information to the defense the next day.

There has never been any suggestion that Officer Carmin's phone search was followed up on, or that it had any impact whatsoever on the prosecution of this case. The defense suggests that it's implausible that the police wouldn't follow up on phone evidence as part of its investigation. Maybe in an ideal world law enforcement would have the time and resources to run down every lead in every case. But frankly, as far as I can tell, the investigation pretty much started and ended on November 14, 2013. The police found the methamphetamine and got a confession – as far as they were concerned, case closed. The government's case at trial, from all indications, was going to consist of Officer Young explaining the traffic stop and search, an expert on the drug business to explain things like street value of drugs, and a scientific expert to explain the lab analysis of the methamphetamine. Officer Carmin doesn't appear to have been involved with the case after Pecina's arrest and his initial court appearance the next day. There is no reason that Agent Leary would or should have asked Officer Carmin about the phones because Officer Carmin wasn't supposed to be working on the case. As for Officer Young, he's a patrol officer and he wouldn't be involved in a targeted drug investigation (to whatever extent there even was one). He made the arrests, got back in his patrol car, and moved on.

It wasn't textbook police work, but it makes sense. I believe that Officer Young and Agent Leary didn't know about the phone searches until November 2014, and so they didn't participate in withholding that information from the prosecutor (and, by extension, from the defense). Given that, I still believe Officer Young's and Agent

Leary's testimony from the initial suppression hearings. Furthermore, Officer Carmin's withholding of information doesn't bear on the car stop and search, or the questioning of Pecina that happened before the phone search did (so the questioning and confession couldn't possibly have been based on the phone search). Therefore Pecina's motion for reconsideration of his motion to suppress evidence is denied.

## CONCLUSION

Pecina's Motion to Reopen the Suppression Hearing was **GRANTED** and a supplemental hearing was held on November 10, 2014. For the foregoing reasons, and as stated from the bench after the supplemental hearing, Pecina's Motion for Reconsideration of the Court's Denial of the Motion to Suppress Evidence is **DENIED**. (DE 108.)

**SO ORDERED.**

ENTERED: November 21, 2014

<u>/s/ Philip P. Simon</u>
**PHILIP P. SIMON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**